# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dauphin County Social Services for   :
Children and Youth,   :
                Petitioner   :   **CASE SEALED**
  :
          v.   :   No. 347 C.D. 2020
  :   Argued:  September 17, 2020
Department of Human Services,   :
              Respondent   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**              **FILED:  October 14, 2020**


Dauphin County Social Services for Children and Youth (Agency) petitions for review of a Final Order of the Secretary of Human Services (Secretary), upholding an order of the Department of Human Services (Department), Bureau of Hearings and Appeals (Bureau).  The Bureau adopted the recommendation of an Administrative Law Judge (ALJ) to sustain an appeal by V.S. (Father) and to expunge an indicated report identifying Father as a perpetrator of child abuse on the ChildLine and Abuse Registry (Registry) under the Child Protective Services Law (CPSL).[1]  Agency argues the ALJ erred in determining it did not present substantial evidence that Father was a perpetrator of child abuse against one of his five-month-

---

[1] 23 Pa.C.S. §§ 6301-6387.

old twins (Child).  Based upon the findings of fact and credibility determinations, by which we are bound, we agree that Agency did not satisfy its burden of proving Father recklessly placed Child at reasonable risk of bodily injury.  Therefore, we affirm.

On October 16, 2018, Agency received a referral and initiated an investigation into an incident involving Father.  An Agency Caseworker (Caseworker) interviewed Mother, attempted to interview Father, took photographs of the apartment, checked the temperature outside that day, and consulted with police.  On December 17, 2018, Agency filed an indicated report against Father based upon that investigation.  According to the Child Protective Services Investigation Report, commonly called a CY-48, Caseworker determined that Father "[c]reat[ed] a [r]easonable [l]ikelihood of [b]odily [i]njury to a Child [t]hrough [a]ny [r]ecent [a]ct/[f]ailure to [a]ct."  (Reproduced Record (R.R.) at 8.)  Father filed a timely appeal requesting expungement of the indicated report.

A hearing was held on May 30, 2019, at which Caseworker, a police officer who responded to the scene (Officer), and Child's Mother testified.[2]  Caseworker testified as follows based upon her investigation and interview with Mother.  At approximately 7:00 p.m. on October 15, 2018, police responded to a verbal disagreement involving Father and Mother and separated them into different rooms for the evening.  (*Id.* at 94.)  Around midnight on October 16, 2018, Mother told Caseworker that Father entered the bedroom where Mother, Child, and Child's twin sister were located and demanded that they leave the residence.  (*Id.* at 95.)  When Mother refused, Mother told Caseworker that Father "attempted to lift the mattress with the two children and [Mother] on the mattress," but was unsuccessful.  (*Id.*)

---

[2] Father appeared, pro se, at the hearing and did not testify.

Mother told Caseworker that Father then picked up Child, who was swaddled in a blanket, took her outside the apartment, propped her up against the wall, shut the door, and told Mother "to come get her child." (*Id.*) Mother, who was carrying the twin sister, picked Child up, at which time Father locked the door behind them. (*Id.*) Mother went to a neighboring apartment building and called police. (*Id.*) According to Caseworker, it was 47 degrees outside, but Caseworker was unaware of what the temperature was inside the apartment building. (*Id.* at 104.) Mother and the children were locked outside of their residence for 40 minutes. (*Id.* at 107.) Caseworker issued the indicated report based upon the incident involving the mattress and Child being placed outside the apartment. (*Id.* at 118-19.) Caseworker acknowledged the apartment door led to a hallway, which was enclosed. (*Id.* at 124-25.)

Officer testified as follows. He did not respond to the earlier call; he only responded to the second incident where Mother and the children were locked out of the apartment. Mother told Officer that Father "came in and flipped the mattress, and then took one of the daughters out into the . . . hallway." (*Id.* at 142.) Officer did not recall what the weather was like but acknowledged the hallway was a common area. (*Id.* at 143.) He was also unaware of the temperature in the hallway. (*Id.* at 148.) Officer charged Father with endangering the welfare of a child but the charges were withdrawn or dismissed after Father completed parenting classes. (*Id.* at 145.)

Mother testified via telephone as a hostile witness for Agency as follows. Father did not try to flip the mattress but did place Child in the hallway. (*Id.* at 155.) Mother was not concerned that Child was in any danger because she and Father "were both right there" and Child was within arm's reach of both her and Father. (*Id.* at 160, 174, 176-77.) Child could not crawl, roll over, or go anywhere, and

3

Father did not throw Child to the floor but placed Child there. (*Id.* at 160.) Mother reiterated that Child "wasn't in harm's way" because "[w]e were right there." (*Id.* at 161.) According to Mother, "as soon as [Father] put [Child] down, like I was right there. Like, she wasn't even on the floor, like a second. I picked her right up." (*Id.*) Mother did not need to walk to retrieve Child from the hallway and simply reached down and picked her up. (*Id.* at 170.) Mother repeatedly testified Father did not close the door leaving Child alone in the hallway. (*Id.* at 155-56, 162-64, 169-70, 174, 178-79, 181.) Mother also testified Child was not on the mattress but was in a bassinet. (*Id.* at 168, 179.)

The ALJ found Caseworker and Officer credible and Mother "mostly not credible." (ALJ Adjudication, Finding of Fact (FOF) ¶¶ 19-21 (emphasis omitted).) Specifically, the ALJ found Mother showed bias in favor of Father, was trying to protect him, and was minimizing what he did. (*Id.* ¶ 24). Although Mother claimed at the hearing to not remember much of the incident, the ALJ found her statements to Officer and Caseworker on the day of the incident more credible than her testimony at the hearing several months later. (*Id.* ¶¶ 25-26.) While the ALJ found Father attempted to lift or flip the mattress where Child was laying swaddled in a blanket and then picked Child up and placed her outside the apartment door propped up against a wall in the enclosed common area, closed the door, and told Mother to get Child, (*id.* ¶¶ 6-7, 11), the ALJ found Mother immediately picked Child up, at which time Father locked Mother, Child, and the twin sister out of the apartment, (*id.* ¶¶ 8-10). In making these findings, the ALJ found Mother credible when testifying that Child was outside the apartment "'for like a second' before she 'just reached down to grab her'" and that Mother did not believe Child was in any danger. (*Id.* ¶¶ 22-23; *see also* ALJ Adjudication at 10.) Accordingly, the ALJ found Agency

4

did not meet its burden of proving, by substantial evidence, that Father committed child abuse by intentionally, knowingly, or recklessly causing bodily injury to Child "through any recent act or failure to act" pursuant to Section 6303(b.1)(5) of the CPSL, 23 Pa.C.S. § 6303(b.1)(5), as alleged by Agency.

The ALJ reasoned that Agency did not present substantial evidence to show that Father's act of placing Child outside the apartment door on the concrete floor while swaddled in a blanket "for a second" before Mother picked her up created a reasonable likelihood that Child would sustain bodily injury. (ALJ Adjudication at 9.) The ALJ noted that Mother testified Father never closed the door, which the ALJ found credible, and that there was no evidence Child was exposed to the elements or outdoor cold because the hallway was enclosed. (*Id.*) The ALJ continued:

> Granted [Father's] behavior was immature and showed a lack of common sense and poor judgment; however, this behavior did not amount to child abuse. This ALJ must consider whether [Father's] behavior amounted to recklessness when he placed [Child] outside of his apartment door. The evidence points to [Child] not suffering any ill effects of being left ou[t]side of her apartment for a very short period of time. In the case at bar, there is not substantial evidence that [Father] acted negligently with respect to a material element of an offense when he should be aware of a ***substantial and unjustifiable risk*** that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a *gross deviation from the standard of care that a reasonable person would observe in the actor's situation.*

> In this case, there is not substantial evidence that [Father's] actions amount to an awareness of a substantial and unjustifiable risk that the material element exists or will result from his conduct. [Father] should not have necessarily expected that his 5-month-old daughter might be harmed by his placing her by his apartment door while her mother was standing right there. His behavior was totally unreasonable and thoughtless and perhaps a gross deviation from what a reasonable person/parent in [Father]'s shoes would do under the circumstances.

5

> However, this behavior was not reckless and did not create a reasonable likelihood of bodily injury.

(*Id.* at 9-10 (emphasis and underscore in original).) Therefore, the ALJ recommended that Father's appeal be sustained and that his name be expunged from the Registry. (*Id.* at 11.) By Order dated August 16, 2019, the Bureau adopted the ALJ's recommendation in its entirety.

Thereafter, Agency filed an Application/Petition for Reconsideration in which it alleged the Bureau correctly used the reckless standard to analyze the incident but misapplied that law to the facts. (R.R. at 67.) Agency further alleged Mother's belief that Child was not in danger should not be considered as that is the factfinder's responsibility. (*Id.*) Lastly, Agency alleged the Bureau "did not address the reasonable likelihood of bodily injury that the victim child was subject to when [Father] attempted to flip the mattress that the victim child and victim child's sister were laying on," as well as the young age of Child. (*Id.* at 68.) By order dated September 9, 2019, the Secretary granted reconsideration. (*Id.* at 70.) Subsequently, on March 10, 2020, the Secretary issued a Final Order upholding the Bureau's decision "for the reasons stated by the Bureau." (*Id.* at 72.)

Agency now petitions this Court for review,[3] arguing the ALJ erred in determining it did not present substantial evidence to show Father was a perpetrator of child abuse, pointing to evidence that Father attempted to flip the mattress where Child was laying and propped Child up, unsupervised, outside the apartment in a cold hallway. It argues the ALJ did not engage in a "weighing dynamic" when evaluating the evidence. (Agency's Brief (Br.) at 12.) Namely, Agency asserts the

---

[3] "This Court's review is limited to determining whether legal error has been committed, whether constitutional rights have been violated, or whether the necessary findings of fact are supported by substantial evidence." *F.R. v. Dep't of Pub. Welfare*, 4 A.3d 779, 782 n.7 (Pa. Cmwlth. 2010).

ALJ "improperly relied upon selective portions" of Mother's testimony and disregarded the testimony of Caseworker and Officer, who recorded Mother's statements within hours of the incident, and whose testimony corroborated one another. (*Id.* at 15-17.) Finally, Agency argues the ALJ found Father's "behavior was totally unreasonable and thoughtless and perhaps a gross deviation from what a reasonable person/parent in [Father]'s shoes would do under the circumstances," which is "precisely the definition of recklessness." (*Id.* at 16-17.)

The Department responds that the ALJ agreed that Father committed the acts and accepted Agency's facts but determined that Father's conduct did not meet the definition of child abuse. It argues Father's behavior was immature, Father lacked common sense, and Father showed poor judgment, but there was no evidence Father acted recklessly because there was no description of what Father allegedly did when he attempted to "flip" the mattress. According to Department, the hallway incident is even clearer because there is no evidence that Father created a substantial and unjustifiable risk of bodily injury so there is no evidence of recklessness.

The county agency bears the burden of showing through substantial evidence that an "indicated report of child abuse is accurate." *F.R. v. Dep't of Pub. Welfare*, 4 A.3d 779, 782 n.7 (Pa. Cmwlth. 2010). "Substantial evidence" is defined by the CPSL as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." 23 Pa.C.S. § 6303. This standard has become referred to as a "weighing dynamic." *R.J.W. v. Dep't of Human Servs.*, 139 A.3d 270, 288 (Pa. Cmwlth. 2016) (citing *A.P. v. Dep't of Pub. Welfare*, 98 A.3d 736, 744 (Pa. Cmwlth. 2014)). "When performing this 'weighing dynamic,' the factfinder must make and explain credibility determinations and weigh the evidence 'with reference to demeanor and substance of the testimony and all other

7

evidence to enable meaningful appellate review.'" *Allegheny Cty. Office of Children, Youth & Families v. Dep't of Human Servs.*, 202 A.3d 155, 163 (Pa. Cmwlth. 2019) (quoting *A.P.*, 98 A.3d at 744-45). "[I]n discharging [its] duty[,] the factfinder must consider all the named perpetrator's evidence that conflicts with the county's evidence." *A.P.*, 98 A.3d at 744. "In determining whether a finding of fact is supported by substantial evidence, a reviewing court must give the prevailing party the benefit of all reasonable and logical inferences that may be drawn from the evidence." *E.M. v. Dep't of Human Servs.*, 191 A.3d 44, 52 (Pa. Cmwlth. 2018). Furthermore, "[t]he Secretary of the Department (or the Secretary's designee) is the ultimate factfinder . . . and . . . is free to accept or reject the testimony of any witness, either in whole or in part." *Allegheny Cty. Office of Children, Youth & Families*, 202 A.3d at 163-64. Issues of weight and credibility are solely within the province of the factfinder, and the findings cannot be disturbed or evidence reweighed by this Court. *Id.* at 164; *A.P.*, 98 A.3d at 743. Finally, whether there is substantial evidence is a question of law. *Allegheny Cty. Office of Children, Youth & Families*, 202 A.3d at 163.

Here, Agency alleges Father committed child abuse by "recklessly . . . [c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1)(5). Under the CPSL, the term "[r]ecklessly" has the same meaning as found in Section 302 of the Crimes Code, 18 Pa.C.S. § 302. 23 Pa.C.S. § 6303(a). Under the Crimes Code:

> [a] person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

8

18 Pa.C.S. § 302(b)(3).  The CPSL defines "[b]odily injury" as an "[i]mpairment of physical condition or substantial pain."  23 Pa.C.S. § 6303(a).  "Recent act or failure to act" is defined as "[a]ny act or failure to act committed within two years of the date of the report to the department or county agency."  *Id.*

Agency alleges Father committed child abuse against Child in one of two ways:  (1) by attempting to flip the mattress over upon which Child was laying; or (2) by placing Child in the hallway outside the apartment, propped up against a wall, and closing the door.  We begin with the second incident first, as that is the incident upon which the ALJ focused.  The ALJ found, and the Bureau subsequently adopted and the Secretary later upheld, that Father did place Child outside the apartment door.  However, importantly, the ALJ also found that, consistent with Mother's credited testimony, Child was only there "about a second" before Mother picked Child up.  (FOF ¶ 9.)  Also, it is undisputed that the hallway is an enclosed common area within the apartment building.  (*Id.* ¶ 11.)  We agree with the ALJ that Father's "behavior was immature and showed a lack of common sense and poor judgment," (ALJ Adjudication at 9), but we cannot conclude that the ALJ's findings are unsupported by substantial evidence or that the ALJ erred in determining Agency did not meet its burden of proof with regard to this incident.  The ALJ found, as permitted to do as the factfinder, *A.P.*, 98 A.3d at 743-44, that Child was alone in the hallway for "about a second."  (FOF ¶ 9.)  Mother's credited testimony supports this conclusion.  (R.R. at 161.)  Although the ALJ chose not to fully credit most of Mother's testimony, the ALJ believed Mother when she repeatedly testified that she and Father were "right there," within arm's reach of Child.  (*Id.* at 160-61, 174, 176-77.)  Again, as factfinder, the ALJ may credit a witness in whole or in part.  *Allegheny Cty. Office of Children, Youth & Families*, 202 A.3d at 163-64.  Here, it

9

is apparent that the ALJ carefully weighed the evidence presented and found it favored Father. Even if we would have reached a different result, we cannot substitute our findings for the ALJ's. *A.P.*, 98 A.3d at 743. In summary, Agency was required to show Father acted recklessly in "[c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1)(5). Based on the findings, we cannot find error in the determination that Father's act of placing Child outside the apartment door in an enclosed hallway for "about a second," while Mother and Father were "right there," did not create a reasonable likelihood that Child would suffer bodily injury in such a short amount of time. (FOF ¶ 9; R.R. at 160-61, 174, 176-77.)

That brings us to the other basis for Agency's indicated report: the mattress incident. Agency presented limited evidence related to the mattress incident. Caseworker testified that Mother told her that Father "attempted to lift the mattress with the two children and [Mother] on the mattress," but was unsuccessful. (R.R. at 95.) Officer testified Mother told Officer that Father "came in and flipped the mattress, and then took one of the daughters out into the . . . hallway." (*Id.* at 142.) There is no other description of what Father allegedly did when he attempted to "lift" or "flip" the mattress, such as how far he lifted the mattress off the ground, or how close the children were to the mattress edge. Agency was required to show Father acted recklessly in "[c]reating a reasonable likelihood of bodily injury to a child through any recent act or failure to act." 23 Pa.C.S. § 6303(b.1)(5). Without more detail as to Father's actions regarding the mattress incident, we cannot conclude Agency met its burden.

Agency has raised questions regarding whether the ALJ legally erred in determining Agency failed to present substantial evidence of child abuse at the

hearing. We recognize the difficulty Agency encountered when Mother testified as a hostile witness at the hearing. However, we cannot find error here, based on the credited testimony and findings, and in accordance with our standard of review. Accordingly, we affirm the Secretary's Final Order.

_____
**RENÉE COHN JUBELIRER,** Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dauphin County Social Services for : 
Children and Youth, :
                        Petitioner    :    **CASE SEALED**
                                      :
              v.                      :    No. 347 C.D. 2020
                                      :
Department of Human Services,         :
                        Respondent    :

# **O R D E R**

    **NOW**, October 14, 2020, the Final Order of the Secretary of Human Services in the above-captioned matter is **AFFIRMED**.

 

_____

**RENÉE COHN JUBELIRER,** Judge